The appealing party has shown good grounds to reconsider the evidence. However, upon much detailed reconsideration of the evidence, the undersigned reach the same facts and conclusions and holdings as those reached by the Deputy Commissioner, with some modifications. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate order.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between plaintiff and defendant-employer at all relevant times.
3. Travelers Insurance Company is the carrier on the risk.
4. Plaintiff's average weekly wage was $425.11, yielding a compensation rate of $283.42.
5. Defendants paid plaintiff temporary total disability pursuant to a Form 21 Agreement for Compensation approved by the Industrial Commission on 12 September 1988.
6. The date of plaintiff's compensable injury was 22 June 1988.
7. Defendants paid plaintiff pursuant to a Form 26 Supplemental Agreement for Compensation approved by the Industrial Commission on 12 January 1990. Defendants paid to plaintiff an additional permanent partial disability pursuant to a Form 26 Supplemental Agreement for Compensation approved by the Industrial Commission on 30 October 1991.
8. The parties stipulated to a bound volume of plaintiff's medical records.
9. The contested issues to be resolved are as follows:
 a. Has plaintiff suffered a substantial change of condition pursuant to N.C. Gen. Stat. § 97-47?
 b. If so, to what compensation or benefits, if any, is plaintiff entitled?
 ***********
Based upon all of the competent evidence from the record herein, the Full Commission adopts the findings of fact by the Deputy Commissioner with minor modifications as follows:
 FINDINGS OF FACT
1. At the time of the hearing, plaintiff was a thirty-eight year old male who had been married for sixteen years.
2. On 22 June 1988, plaintiff was working for defendant-employer Cranston Print Works when he sustained a crush injury to his right foot when a roll of cloth fell on it.
3. Following the injury, the plaintiff received medical treatment from Park Ridge Hospital. The x-rays that were taken did not show any evidence of a fracture.
4. Plaintiff next presented to Dr. William Callison on 9 November 1988. Plaintiff complained of significant pain in the dorsum of his right foot, especially when standing and walking. He had difficulty flexing and extending the three middle toes and had decreased sensation on the dorsum of his right foot. He reported complaints of the foot swelling after standing on his feet all day. Dr. Callison diagnosed plaintiff with a severe contusion to his foot. He advised plaintiff that there was nothing he could offer orthopedically to treat the symptoms. Dr. Callison advised plaintiff to continue working in his regular capacity.
5. On 22 December 1988, Dr. Callison again examined plaintiff for similar complaints. Dr. Callison reiterated that he had nothing orthopedically to offer plaintiff, and again he advised plaintiff to continue to work.
6. Plaintiff again presented to Dr. Callison on 16 February 1989. Plaintiff's symptoms and complaints were unchanged. He had soreness across the dorsum of his right foot in the area of the MP joint. Plaintiff's three middle lesser toes, 2, 3, and 4, were now drawing up in hyperextension at the MP joint due to contracture of the long extensor tendon.
7. On 22 March 1989, Dr. Callison discharged plaintiff from his care and gave him a permanent partial impairment rating of 5% to his right foot
8. On 26 April 1989, plaintiff presented to Dr. Wendell Moses for a second opinion. On examination, Dr. Moses noted tenderness of the foot, discoloration of the dorsum of the foot, and some toe clawing. According to Dr. Moses, no surgical intervention was necessary. Plaintiff might have been suffering from sympathetic dystrophy, but later Dr. Moses determined that plaintiff had not developed sympathetic dystrophy. Plaintiff's pain arose from the injury site itself.
9. On 8 June 1989, plaintiff was again seen by Dr. Moses. Plaintiff complained of foot swelling and pain. In addition, plaintiff still had claw toe deformities. Plaintiff had the same complaints at the time of his next examination on 11 July 1989. Dr. Moses released plaintiff from his care on 11 July 1989.
10. On 14 September 1989, Dr. Moses gave plaintiff a permanent partial disability rating to the right foot of 5%, based on the presence of a pain causing neuroma which had formed as a result of plaintiff's accident.
11. Plaintiff continued to see both Drs. Moses and Callison throughout 1989. Dr. Callison eventually changed his permanent partial disability on 15 September 1989, to 10%. Dr. Callison released plaintiff from his care, but plaintiff returned again in December of 1989. At that point, Dr. Callison had nothing further to offer and reiterated that plaintiff's rating remained at 10% permanent partial impairment.
12. In December 1989, defendants paid plaintiff for a 7.5% permanent partial disability, based upon the average of Dr. Callison's and Dr. Moses' ratings.
13. In February of 1990, Dr. Moses confirmed his rating of 5%. The only restriction placed on plaintiff was avoidance of working at heights. Otherwise, plaintiff could be employed fully without restriction. Plaintiff was able to bear full weight on his foot without risk of long term problems.
14. Plaintiff continued to seek treatment from Dr. Moses intermittently. Dr. Moses continued to inform the plaintiff that there was no further treatment he could offer to improve his condition. Finally, in January of 1991, after informing plaintiff that there was a good chance that there would be no improvement in his condition, Dr. Moses excised the post-traumatic neuroma. Subsequently, the neuroma re-formed.
15. On 8 May 1991, plaintiff returned to Dr. Moses complaining of clawing in his foot. The clawing problems with the metatarsal head and transverse arch of plaintiff's forefoot were natural degenerative changes, unrelated to his prior injury or the subsequent surgery.
16. By 6 June 1991, plaintiff had reached maximum medical improvement. He retained a 10% permanent partial impairment to his right foot, based on the persistent pain and numbness and the recurrence of the neuroma. Plaintiff was able to work without restriction.
17. As a result of the increase in Dr. Moses' rating to 10%, the defendants paid plaintiff, pursuant to a Form 26, for an additional 2.5% permanent partial disability, thereby compensating him for a cumulative permanent partial impairment of 10% to his right foot as a result of his 22 June 1988 injury by accident.
18. Plaintiff returned to Dr. Moses several more times, but no additional treatment was given. Plaintiff requested another excision of the re-formed neuroma, but Dr. Moses advised against further surgery.
19. Plaintiff was seen by Dr. Moses on 4 September 1992, 15 July 1993, and 13 November 1996, but during these visits Dr. Moses did not change his opinion regarding any restrictions, prognosis, treatment plan or diagnosis with regard to the plaintiff's medical condition. Plaintiff's functional status had not changed over a three year period from 1993 through 1996. Plaintiff's 10% rating remained unchanged from the prior evaluation according to Dr. Moses.
20. On 13 November 1996, Dr. Moses did find some minor changes in plaintiff's right foot. Plaintiff had developed bone spurs and arthritic changes in his ankle. According to Dr. Moses, the arthritic changes in plaintiff's ankle were not significant nor did they affect his physical status or ability. Moreover, plaintiff's functional status and ability to work had not changed in three years. Nor had the amount of plaintiff's disability changed.
21. Plaintiff does require that the UCB orthotic device involving his metatarsal joint be changed based upon the shape of his foot. Plaintiff may need a custom molded shoe. The orthotic device and custom shoe are for the benefit of the degenerative changes in the claw foot deformity and are not required to give relief from the conditions caused by the compensable injury by accident.
 ***********
Based on the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident on 22 June 1988 when a roll of cloth fell on his right foot. N.C. Gen. Stat. § 97-6.
2. Plaintiff retains a ten percent (10%) permanent partial impairment to his right foot as a result of his compensable injury by accident and residual impairment from the surgery subsequent thereto. Plaintiff's permanent partial disability rating has not changed. N.C. Gen. Stat. § 97-31(14).
3. Defendants have paid plaintiff for his permanent disability pursuant to two Form 26 Supplemental Agreements for Compensation approved by the Commission on 23 January 1990 and 30 October 1991, respectively.
4. The loss of range of ankle motion, the changes in the shape of his foot and deformities and the degenerative processes associated therewith are not results of nor were they caused by plaintiff's compensable injury of 22 June 1988.
5. Plaintiff has not proven by a preponderance of the evidence that there has been a substantial change in his physical condition and his capacities to earn wages. N.C. Gen. Stat. § 97-47.
6. Plaintiff is entitled to have defendant provide medical treatment which is reasonably required as a result of the compensable injury by accident. However, the approved treatment does not include the requested orthotic device or shoes. Plaintiff is entitled to select an orthopedic surgeon of his choice. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for an increase of permanent partial disability is hereby DENIED.
2. Plaintiff is entitled to ongoing medical care and defendants shall reimburse plaintiff for medical expenses.
3. Defendants shall permit plaintiff to select an orthopedic specialist of his own choosing.
4. Defendants shall pay the costs.
This the _______ day of May 1998.
 S/ _____________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/ __________________ BERNADINE S. BALLANCE COMMISSIONER
S/ _____________________ RENÉE C. RIGGSBEE COMMISSIONER
LKM/jth